IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DENISE CLAYTON, and LEANN HARRIS,

    Plaintiffs,

v.                                Civil Action No. 5:04CV143
                                           (STAMP)

UNITED STATES OF AMERICA,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Procedural History

The plaintiffs, Denise Clayton ("Clayton") and Leann Harris ("Harris"), filed a complaint against the defendant, the United States of America, alleging that the plaintiffs are entitled to a tax refund from income taxes paid on settlement funds involving an inter vivos trust pursuant to 26 U.S.C. § 7422.

On April 14, 2006, the plaintiffs filed a motion for summary judgment. On May 9, 2006, the defendant filed a response to the plaintiffs' motion and a cross-motion for summary judgment, to which the plaintiffs replied. For the reasons set forth below, this Court finds that the plaintiffs' motion for summary judgment must be denied and the defendant's motion for summary judgment must be granted.

II. Facts

Ten years before his death, Lee S. Glessner set up an inter vivos trust under which his son, Lee J. Glessner ("Glessner"), his daughter, Imogene G. Tankovits ("Tankovits") and WesBanco Bank Wheeling were named as trustees. Under his will, Glessner and Tankovits were named as executor and executrix. Pursuant to the will's pour-over clause, the residuary assets of the estate were to be the bulk of the inter vivos trust corpus. The primary residual asset of the estate was 1,089 shares of stock in Windmill Trucker's Center ("Windmill stock"). The residuary beneficiaries of the trust were the children of Glessner and Tankovits.

In 1996, the four surviving children of Tankovits filed a complaint in the Circuit Court of Ohio County, West Virginia against the defendants, Glessner and Tankovits, WesBanco, Windmill and various certified public accountants ("CPA defendants"). An amended complaint was filed which alleged that Glessner and Tankovits had been operating a de facto trust out of estate assets that had not been brought under the supervision and control of WesBanco, the corporate trustee. The amended complaint also asserted several violations, including but not limited to, claims of breach of the duty of care and loyalty and negligence against WesBanco, negligence against the CPA defendants, and self dealing, interference with testamentary bequest and conversion against the

"Glessner Entities," which included Windmill and other business entities owned and operated by Glessner and/or Tankovits.

The parties settled the civil action in December 1999 and the plaintiffs received "a $900,000 settlement as the result of payments from WesBanco ($500,000); Nationwide, as the insurer of Windmill ($250,000); and the CPA defendants ($150,000)" as well as a $2.5 million payment from Glessner and Tankovits. (Compl. ¶ 8.) Pursuant to the settlement agreement, the funds were dispensed into the trust and then distributed to Tankovits's four children. Each of the children received $225,000.00, which was one-fourth of the $900,000.00 settlement. In consideration for the settlement, all four children released their interest in the trust.

In 2000, the plaintiffs filed their income tax returns and included the settlement proceeds of $225,000.00 as income on their 1999 federal tax returns. On October 3, 2000, the Circuit Court of Ohio County ruled that the $900,000.00 payment from WesBanco, Nationwide and the CPA defendants was "compensatory damages" for tax purposes. On appeal, the Supreme Court of West Virginia held that federal income tax consequences present questions of federal law that are to be solely adjudicated by the federal courts and not by the Circuit Court of Ohio County. (Def.'s Aff. Re: Mot. for Summ. J. Ex. 4; Tankovits v. Glessner, No. 30029 (S. Ct. W. Va., Jan. 2002).)

The plaintiffs, two of Tankovits's children involved in the underlying complaint, then filed this civil action seeking judgment against the defendant in the amounts of $65,062.00 with respect to Clayton and $69,644.00 with respect to Harris, representing refunds of the income taxes they had each paid on their share of the $900,000.00 settlement.

### III. Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth

specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party

opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV. Discussion

Section 61(a) of the Internal Revenue Code defines gross income as "all income from whatever sources derived," subject to certain exclusions provided in the Code. 26 U.S.C. § 61(a).

Title 26, United States Code, Section 102(a) states in relevant part that:

> (a) **General Rule.** Gross income does not include the value of property acquired by gift, bequest, devise or inheritance.

26 U.S.C. § 102(a).

Title 26, United States Code, Section 104(a)(2) states that:

> (a) **In general**. Except in the case of amount attributable to (and not in excess of) deductions allowed under section 213 [26 USCS § 213] (relating to medical, etc., expenses) for any prior taxable year, gross income does not include --
>
> . . .
>
> (2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as a lump sums or as periodic payments) on account of personal physical injuries or physical sickness;

26 U.S.C. § 104(a)(2).

In their motion for summary judgment, the plaintiffs assert that a gift, bequest, devise or inheritance is not included in gross income pursuant to 26 U.S.C. § 102(a). In addition, the plaintiffs assert that "their brothers received their refunds from

the Internal Revenue Service . . . ." (Pls.' Reply to Mot. for Summ. J. at 1.)

In response, the defendant filed a cross-motion for summary judgment, asserting that the proceeds from a settlement involving an inter vivos trust is income under § 102. In addition, the defendant asserts that the plaintiffs have not proved and cannot show that they acquired their portion of the $900,000.00 payment by gift, inheritance or bequest under § 102(a) or because of physical injuries or sickness under § 104(a)(2).

1.  <u>Settlement Proceeds under Title 26, United States Code, Section 102(a)</u>

This Court finds that the settlement amount is not excludable from gross income under § 102(a).

The plaintiffs did not acquire the settlement amount of $225,000.00 each by gift, bequest, devise or inheritance, but by settlement of a claim in a lawsuit. "Whether a claim is resolved through litigation or settlement, the nature of the underlying action determines the tax consequences of the resolution of the claim." <u>Tribune Publishing Co. v. United States</u>, 836 F.2d 1176, 1177 (9th Cir. 1988).

In this civil action, the origin and character of the dispute involved an issue over whether Glessner and Tankovits had been operating a de facto trust out of estate assets. The amended complaint also asserted several violations, including but not

limited to, claims of breach of the duty of care and loyalty and negligence against WesBanco, negligence against the CPA defendants, and self dealing, interference with testamentary bequest and conversion against the "Glessner Entities," which included Windmill and other business entities owned and operated by Glessner and/or Tankovits. (Def.'s Cross-Mot. ¶ 3.)

The allegations against Glessner and Tankovits were for violations of the trust's residuary assets while the allegations against WesBanco, Nationwide and the CPA defendants were for negligence and other wrongdoing with respect to their duties regarding the trust in general.

In December 1999, all of the parties in the underlying action settled. The plaintiffs received two separate settlements; first, WesBanco, Nationwide and the CPA defendants settled for $900,000.00, and second, Glessner and Tankovits settled for $2.5 million.

Pursuant to the settlement agreement, the funds were dispensed into the trust and then distributed to the plaintiffs and their two brothers. While the payments were distributed to the plaintiffs and their two brothers by a check denominated as "Partial Distribution of Plaintiff's [sic] Inheritance," this does not indicate that the settlement proceeds from WesBanco, Nationwide and the CPA defendants were to restore the trust assets. (Pls.' Mot. for Summ. J. Ex. 2.)

8

The settlement agreement also does not provide a specific allocation of the proceeds, and thus, this Court must look at the pleadings against WesBanco, Windmill and the CPA defendants in the underlying amended complaint. Based upon the above-stated facts, this Court finds that the amended complaint against WesBanco, Windmill and the CPA defendants alleged breach of fiduciary care, negligence, intentional interference with a testamentary bequest, conversion and fraud. See Tribune Publishing Co. v. United States, 836 F.2d 1176, 1178-79 (9th Cir. 1988).

The underlying complaint stated that the estate assets had not been brought under the supervision and control of the corporate trustee, WesBanco (emphasis added). The "Glessner Entities," which included Windmill, were named in the complaint because Glessner and Tankovits were alleged to have sold off the decedent's Windmill stock to these entities. Nationwide is the insurer of Windmill and is not expressly named in the amended complaint. Further, the CPA defendants were alleged to have been grossly negligent in failing to disclose materially false matters in the books, reports and records of the Lee S. Glessner Estate and trust and the various companies related to the Estate and trust.

This Court finds that WesBanco, Nationwide and the CPA defendants did not have title or possession of the 1,089 shares of Windmill stock, which were the residuary assets of the estate which were to be transferred to the trust. Thus, the plaintiffs could

9

not have received the settlement proceeds from WesBanco, Nationwide or the CPA defendants to restore the loss from the trust, because these defendants did not have title or control of the Windmill stock. See White v. Thomas, 116 F.2d 147 (5th Cir. 1941).[1]

This Court further finds that the settlement agreement was in exchange for plaintiffs' release of all claims against WesBanco, Nationwide and the CPA defendants. Accordingly, the plaintiffs' settlement amount represents gross income, which is not excludable as an inheritance under § 102(a). Thus, the defendant's motion for summary judgment, with respect to whether the plaintiffs' settlement proceeds can be excluded under § 102, must be granted.

2. Title 26, United States Code, Section 104(a)(2)

The defendant asserts that the settlement proceeds are not taxable under § 104(a)(2) because the plaintiffs did not receive the funds "on account of physical injury or sickness as contemplated in 26 U.S.C. § 104(a)(2)." (Def.'s Mot. for Summ. J. at 9.)

This Court finds there has been insufficient evidence to prove that the settlement proceeds from WesBanco, Nationwide and the CPA

---

[1]In the underlying amended complaint, the plaintiff sought, among other relief, restoration of the trust's assets in paragraph B of the prayer for relief. At the pretrial conference on July 12, 2006, plaintiffs' counsel asserted that the purpose of the underlying action was to replace the principal of the trust. This Court finds that the request for restoration of funds is a general allegation as to all of the defendants. The request for restoration of the trust's assets does not apply to the claims against WesBanco, Nationwide and the CPA defendants.

defendants were paid to compensate the plaintiffs for physical injuries or sickness.

To qualify for the exception provided pursuant to § 104(a)(2), a taxpayer must meet a two-prong test. First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights;" and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness." C.I.R. v. Schleier, 515 U.S. 323, 336-7 (1995). To satisfy the second prong, the taxpayer must show that the damages recovered were linked to a personal injury as opposed to an economic loss. Id. at 300.

This Court finds that the plaintiffs fail to meet the second prong of the test.

In the present action, the plaintiffs provide a deposition from Clayton that she has suffered from headaches due to the underlying action. (Pls.' Reply Ex. 1 titled Ex. 2.) Clayton states that these headaches are not only from the lawsuit but from her uncle's failure to fund the trust. Id. at 72. In addition, Clayton states that her sister, Harris, experienced "headaches, nausea, vomiting." Id. at 72.

As previously stated, the settlement agreement lacks express language stating what the settlement amount was paid to settle. Accordingly, this Court looks to the pleadings in the amended complaint. There were some tort or tort type rights pleaded in the

proceedings, which ended in a settlement but there was no specific pleading of personal injury or sickness. See Griffen v. C.I.R., T.C. Memo 2001-5 (U.S. Tax Ct. 2001). Further, the amended complaint did not make a specific demand for damages attributable to the plaintiffs' mental and physical harm. There is no direct link between the personal injury and the recovery of damages for the § 104(a)(2) exclusion to apply. Although plaintiffs provided testimony that they each suffered from physical sickness around the time of the proceedings, they have failed to show a direct link between the personal injuries and the settlement recovery. See id.

Based upon the above-stated facts, this Court finds that there is insufficient evidence that the plaintiffs have alleged any physical injury or physical sickness in the underlying complaint, and thus, have failed to prove that they are entitled to exclude their settlement proceeds under § 104(a)(2). Accordingly, the defendant's motion for summary judgment, with respect to whether the plaintiffs' settlement proceeds can be excluded under § 104(a)(2), must be granted.

### 3. Administrative Consistency

The plaintiffs argue that they should receive a tax refund on the settlement proceeds because the Internal Revenue Service refunded money to the plaintiffs' brothers for the taxes which were paid on the same type of settlement proceeds. The defendant responds that the Internal Revenue Service has a duty of

12

administrative consistency but that it is not estopped from correcting its errors. See Gasper v. Comm'r, 225 F.2d 284 (6th Cir. 1955); Pollack v. Comm'r, 392 F.2d 409, 411 (5th Cir. 1958).

This Court finds that the plaintiffs' argument is without merit. The defendant is not estopped from making a determination on the plaintiffs' taxable income just because it made a different determination on the plaintiffs' brothers' taxable income. Thus, in this instance, the plaintiffs have no claim against the defendant for administrative inconsistencies.

Based upon the above stated information, this Court finds that the plaintiffs' motion for summary judgment must be denied and the defendant's motion for summary judgment must be granted.

## V. Conclusion

For the reasons stated herein, the plaintiffs' motion for summary judgment is hereby DENIED and the defendant's motion for summary judgment is GRANTED. It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:     July 31, 2006

                                    /s/ Frederick P. Stamp, Jr.
                                    FREDERICK P. STAMP, JR.
                                    UNITED STATES DISTRICT JUDGE